Robert B. Sykes (3180)
        bob@sykesmcallisterlaw.com
Alyson C. McAllister (9886)
        alyson@sykesmcallisterlaw.com
C. Peter Sorensen (16728)
        pete@sykesmcallisterlaw.com
**SYKES MCALLISTER LAW OFFICES, PLLC**
311 South State Street, Suite 240
Salt Lake City, Utah 84111
Telephone (801) 533-0222
***Attorneys for Plaintiff***

### UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH NORTHERN DIVISION

| | |
|---|---|
| BRENDA MAYES, as mother and guardian of Child Doe,<br>*Plaintiff,*<br><br>vs.<br><br>DAVIS SCHOOL DISTRICT,<br>DAVE ROBERTS, District Transportation Director, JOHN NAISBITT, and JOHN and JANE ROES 1-10, in their official and individual capacities,<br>*Defendants.* | **COMPLAINT**<br>**and**<br>**JURY DEMAND**<br><br>Civil No. _____<br><br><br>Judge _____<br>Magistrate Judge _____ |

Plaintiff Child Doe, through his mother and general guardian Brenda Mayes, alleges against Defendants Davis School District ("DSD" or "District"), Dave Roberts, John Naisbitt, formerly a bus driver for DSD, and John and Jane Roes as follows:

### PRELIMINARY STATEMENT

This is a Title VI civil rights case brought by Child Doe, a student subjected to racial discrimination, harassment, assault, and bullying by a school bus driver employed by the DSD. These acts occurred in the DSD and went unchecked by officials with authority to stop

1

them.  Central to this case are facts that demonstrate that defendant John Naisbitt, a driver for Davis School District, was driven by racial animus to commit assaults and acts of bullying on mixed race students assigned to his bus routes, which misconduct occurred as he picked up and delivered students to and from West Point Elementary and West Point Junior High School. Complaints were made to school district administrative officials, including Dave Roberts, the District transportation director, and the John and Jane Roes. Based upon the circumstantial evidence that exists in the case, Roberts, the Roes, and other administrators ignored or deflected many complaints about the racially motivated and abusive conduct of Naisbitt towards mixed race children such that Naisbitt was allowed to continue in his job as a bus driver. As a result, his abusive and assaultive behavior on mixed race children continued, with the tacit approval and knowledge of Roberts, the Roes and other administrators who were acting for the DSD.

As a result of this conduct, an incident occurred on the bus driven by Naisbitt on February 4, 2019 which put the life of a biracial seventh grader, Child Doe, in danger. On that date, Naisbitt closed the bus door on Doe's backpack as Child Doe exited the bus, trapping the backpack in the bus, but with Doe's body dangling outside the bus. Naisbitt then drove about 175 feet with Child Doe helplessly pinned to the outside of the door, near the wheel, and in mortal danger. Naisbitt did this because of his animus toward persons of mixed race.

This lawsuit alleges violations of Title VI of the Civil Rights Act of 1964 and violations of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution pursuant to 42 U.S.C. §1983. Child Doe seeks injunctive relief and damages to remedy these violations.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 and 1334 because the matters in controversy arise under the Constitution and the laws of the United States. Specifically, Plaintiff asserts claims under Title VI of the Civil Rights Act of 1964 and the Fourteenth Amendment to the United States Constitution pursuant to 42 U.S.C. § 1983.

2.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the Defendants reside within this Court's judicial district and a substantial part of the events or omissions giving rise to the claims occurred within this district.

## PARTIES

3.      Plaintiff Child Doe is a 14-year-old mixed race male who resides with his mother, Brenda Mayes, in Davis County, Utah. Child Doe is in the 7th grade and attends West Point Junior High School, part of the Davis School District (DSD). Child Doe is suing Defendants through his mother and general guardian, Brenda Mayes.

4.      Defendant Davis School District (DSD) is a public school district located in Davis County, Utah.  Defendant DSD is a recipient of federal financial assistance within the meaning of 20 U.S.C. § 1681(a) and a "person" within the meaning of 42 U.S.C. § 1983.

5.      Defendant David Roberts ("Roberts") is sued in his official and individual capacities. Roberts was at all relevant times the Transportation Director of DSD and was an agent and/or employee of DSD, acting within the scope and course of his employment. Roberts deliberately ignored many complaints prior to the events of February 4, 2019, wherein Plaintiff Brenda Mayes and other persons complained of abusive behavior including racially-driven assaultive and discriminatory conduct by Naisbitt toward minor students such as Child Doe.

3

Naisbitt had repeatedly acted with racial animus toward mixed race students prior to the events of February 4, 2019. Roberts was aware of, deliberately indifferent, tacitly approved and/or openly tolerated such conduct on behalf of DSD and himself individually.

6.     Defendant John Naisbitt ("Naisbitt") is sued in his official and individual capacities. At all relevant times Naisbitt was a school bus driver for DSD and was an agent and/or employee of DSD, acting within the scope and course of his employment. Naisbitt also acted individually, demonstrating racial animus in his assaultive and discriminatory behavior toward mixed race students. There were several incidents of such conduct and animus toward mixed race students prior to the events of February 4, 2019. These incidences were known by and reported to administrators of DSD such as Roberts.

7.     Defendants John and Jane Roes are other DSD administrators which had the responsibility to monitor and/or manage DSD transportation and to prevent racially motivated acts of discrimination against students such as Child Doe. These Roes knew about Naisbitt's racially motivated, assaultive and discriminatory conduct but were deliberately indifferent to it and failed to take action to prevent and/or punish such conduct. The actions and failures to act of these Roes effectively allowed Naisbitt to continue driving for DSD despite acts of blatant racial discrimination and assaultive conduct. This deliberate indifference to such prior conduct resulted in Naisbitt being on the road on 2/4/2019, which enabled the race-based assault against Child Doe on that date.

## FACTUAL ALLEGATIONS

### ~ Events of 2/4/2019 ~

8.     On February 4, 2019, just before 8:00am, Child Doe was exiting the bus at West Point Junior High (WPJH) along with several other students. Naisbitt, the bus driver, had

opened the doors to allow students to exit. Approximately 12 students had already exited the bus and there were several more in line behind Child Doe. As Child Doe began to exit the bus, Naisbitt suddenly and intentionally caused the doors to close, trapping Doe's backpack inside the bus, but with Doe's body hanging or suspended on the outside of the bus.  See Exhibit 1, Video of the Incident.

9.      Naisbitt then proceeded to drive through the school's student drop-off circle for approximately 150-175 feet before stopping to release Child Doe. See Exhibit 2, Photos of the point of door closing and then the release of Child Doe.

10.     Child Doe was trapped outside the bus and could not safely free himself.

11.     Child Doe's body hung mere inches from the wheels of the bus as the vehicle traveled through the drop-off zone.

12.     The bus was traveling at approximately 7-10 MPH during the 150-175 foot drive.

13.     Had the straps on Child Does' backpack broken, Doe would have dropped to the pavement and could have been run over and killed by the bus or could have sustained serious injuries by the fall onto the concrete.

14.     Child Doe was terrified and feared severe and lasting injury for a period of about 20 seconds.

15.     Several other students were in line to exit the bus and witnessed Naisbitt's reckless and malicious behavior.

## ~ Complaints to School & DSD Authorities ~

16.     Later that same day, Doe's mother, Plaintiff Brenda Mayes, met with Principal Adam King and Resource Officer Benjamin Parker regarding the incident. Plaintiff was informed that an investigation into the matter would take approximately seven days.

17.     Plaintiff asked these school officials to file criminal charges against Naisbitt and the case was assigned a case number with Davis County Sheriff's Department.

18.     Plaintiff also spoke with Defendant Roberts, the Transportation Director about the incident.

19.     Roberts appeared not to be at all concerned about the incident and provided no sympathy regarding the events.

*20.*     Roberts then advised Plaintiff that Naisbitt would *remain on his route that very afternoon!*

21.     Plaintiff reminded Roberts of a previous report made regarding Naisbitt in October 2018. She stated that the 2/4/19 incident could have been prevented had Roberts taken action when Plaintiff and others began reporting Naisbitt's inappropriate behavior. Roberts claimed the October 2018 incident never happened.

22.     On February 6, 2019 Plaintiff emailed several school officials requesting to see the video footage from the bus camera recording.

23.     On February 7, 2019, Brenda Mayes emailed Scott Zigich, the DSD Risk Management Director, and superintendent Reid Newey regarding the 2/4/2019 incident and requested an investigation be conducted regarding Roberts and requesting that Naisbitt be terminated. See Exhibit 3, Redacted Email.

24.     In the email, Brenda Mayes explained the negative effect this incident had

on her son, as follows:

> To briefly explain what happened, I received a phone call from my son [Child Doe],
> his voice was shaky and I could tell he was on the verge of tears, I could hear other
> students around him were very animated and discussing what happened. [Child
> Doe] explained to me how John, his bus driver, closed the door on him, trapping
> his body half way in the bus, then put the bus into gear and began to drive off with
> half of his body hanging out of the bus. He sounded terrified and embarrassed.

Exhibit 3.

### ~ <u>Actions of DSD Officials</u> ~

25.     On that same day, Plaintiff received an email from Craig Carter, Assistant

Superintendent, expressing sympathy for the events involving Child Doe and assurances that DSD

had allegedly moved "swiftly and decisively" regarding the employee involved, implying

disciplinary measures were taken.

26.     In fact, there is no known disciplinary action toward Naisbitt.

27.     Plaintiff discovered that Naisbitt had been allowed to "retire," and had not

been terminated, as the school had indicated.

28.     On February 26, 2019 Plaintiff met with school officials Craig Carter,

assistant superintendent, John Zurbochen, another assistant superintendent, and a third party to

view the video of the February 4th incident.

29.     Plaintiff asked these officials what actions had been taken.

30.     Plaintiff was told that the October incident (see ¶¶ 55-65 below) was still

being investigated. Plaintiff asked if they had researched the other complaints made to Roberts.

31.     Plaintiff also asked if there had been any action taken to make policy

changes.

7

32.     DSD officials did not seem to have any intention of taking corrective action to their policies to prevent this or similar situations from occurring in the future.

33.     DSD, Roberts and other DSD employees are mandatory reporters of child abuse.

34.     However, no report of child abuse was ever made to DCFS or to the police.

35.     In February 2019, a phone call was made to Loren Clark Principal at West Point Elementary to request the video footage of the October 10, 2018 incident. Mr. Clark explained that the video footage had been overwritten, and that no one had reviewed or saved the video that is directed at the bus zone. Roberts had conducted the 2018 investigation regarding the incident, and no video footage had been saved.

36.     On February 28, 2019 Plaintiff called the Davis County Sheriff's Office to check on the status of her case against Naisbitt. She spoke with Detective Barney who had apparently been assigned to the case but was as of that moment unaware of the assignment. He had not been contacted by anyone regarding the case. Barney also read over case notes relating to the October 2018 incident, and stated that Davis County Sheriff's Office closed their case based on *information provided by Roberts* on behalf of DSD

37.     On March 9, 2019 Det. Barney interviewed Child Doe and Student Two. After the interview, Det. Barney stated, "Well at least Naisbitt is retired now." This is how it was discovered that no disciplinary action, or termination had been taken as DSD previously indicated.

38.     Based on knowledge and belief, Plaintiff believes Det. Barney has never interviewed Naisbitt to this point. Naisbitt has rescheduled on at least 3 occasions and has hired an attorney.

39.     On March 9, 2019 an anonymous employee from the DSD transportation department revealed to Plaintiff that a) Naisbitt was forced to retire, b) his assault on students was racially motivated, and c) Roberts was fully aware of Naisbitt's intention and motivation and concealed or did not report the information.

40.     On March 11, 2019 Plaintiff contacted Det. Barney to report this information and suggest Barney request documents regarding Naisbitt's employment file.

41.     On March 12, 2019 Plaintiff contacted Pamela Staveros, paralegal for Benjamin Onofrio, legal counsel for DSD, regarding the subpoena received by the School District.

42.     On March 18, 2019 Plaintiff emailed Ben Onofrio, Staveros, Superintendent Newey and Principal Stevenson to inquire if the school district had provided reports regarding Naisbitt to Det. Barney. Plaintiff also inquired if DCFS had been contacted.

43.     On March 19, 2019 Plaintiff received an email from Onofrio stating "Davis School District has not provided any other information to the Sheriff's Department regarding students other than what was subpoenaed. When the District does make a report to DCFS, state law does not allow school districts to comment regarding contacts with DCFS. *See* R277-401-3. However, you are welcome to request records directly from DCFS."

44.     On March 20, 2019 Plaintiff went to DCFS in Clearfield to request these records and was notified that nothing had been reported to them by Davis School District.

45.     On March 27, 2019 Plaintiff received a copy of the video from the school bus incident of 2/4/2019.

46.     Naisbitt had been edited out of the video.

47.     On April 1, 2019 Plaintiff spoke with Det. Barney who had still not met with or interviewed Naisbitt. Barney mentioned that he had received three different videos of the 2/4/19 incident, including one with footage from the school building.

48.     On April 8, 2019, Plaintiff emailed Onofrio, Newey, and others at DSD and expressed being upset with the video received, because Naisbitt had been edited out and over editing had prevented an accurate view of the incident.

49.     On April 09, 2019 Onofrio responded by email stating "we obscured the faces of the other students on the video. We did not otherwise alter the video. No 'zooming in' has occurred in your copy."  This was another action taken by DSD to conceal the actions of the incidents.

~ **Knowledge of Prior Racial Harassment & Abuse** ~

50.     The DSD and transportation officials had absolute knowledge of prior racially motivated harassment, abuse and assaults by Naisbitt going back to September 2017.

51.     In September 2017, Naisbitt took no action when a Caucasian sixth grade boy physically assaulted a third grade biracial girl on the bus. Child Doe had to stop the assault. This incident was reported to Loren Clark, principal at WP Elementary by Brenda Mayes, who stated it was reported it to the transportation department, which was overseen by Roberts.

52.      Plaintiff was upset that Naisbitt, who was operating the bus that day, did not stop the incident between the sixth grade student and the third grade student or the subsequent shoving match between Child Doe and the sixth grade student.

53.     Naisbitt failed to intervene because of his racial animus towards Child Doe.

54.     Over the next few months parents made complaints about Naisbitt's erratic behavior. Naisbitt allegedly blamed this on the students standing up while riding the bus.

55.     Principal Clark got on the bus several times before it left the school to admonish students about standing up on the bus.

56.     Throughout October 2017, Naisbitt pulled the bus to the side of the road several times on the route home while he berated the students calling them names, such as stupid idiots.

57.      On October 23, 2017, DSD was notified by one or more parents that Naisbitt had pulled off to the side of the road on his afternoon route, refusing to take the students to their assigned stops. Many concerned parents had to drive to this location to pick up their children who had been waiting approximately 30 minutes.

58.     On October 10, 2018 Student One and Student Two were boarding the bus at West Point Elementary after the school day when Naisbitt intentionally closed the doors on Student One. Student Two attempted to pry open the doors to release Student One. As Student Two was passing through the doors, Naisbitt again tried closing the doors on Student Two. Student One's parents took pictures of the visible injuries Student One had suffered, and they offered these photos to DSD on multiple occasions.

59.     Students One and Two were mixed race young males.

60.     Student Two was a 5th grade student and another son of Plaintiff.

61.     Student One's parents reported this incident immediately to Roberts, the DSD transportation director, and filed charges with the Davis County Sheriff.

62.     Student One's parents requested at a minimum Naisbitt be removed from the route.

63.     On October 24, 2018 Roberts sent an email to Student One's mother stating the investigation had been closed because they did not receive a statement from them regarding

11

the incident. The email chain shows a statement was provided on October 12, 2018.  The Davis
County Sheriff's Department later closed its case based on the report from Roberts.

64.     Every incidence of racial assault and harassment described herein was
reported at least to Roberts, as the transportation director of DSD, but he failed to follow up or
take any significant action.

65.     Had action been taken by Roberts on prior occasions, the incident on
2/4/2019 wherein Child Doe was racially assaulted and terrified, would not have happened.

66.     The morning after the 10/10/2018 assault, October 11, 2018, the father of
Student One, a biracial young man, drove his child to the bus pick-up area to confront Naisbitt
about closing the door on his child. Naisbitt denied even knowing Student One.

67.     The father of Student One then reported the incident to Principal Clark and
to Roberts, the Transportation Director.

68.     On October 12, 2018, during midmorning, the father of Student One noticed
Naisbitt parked in the school bus, outside of the father's location of employment. This was a clear
attempt to retaliate against Student One by intimidating or harassing Student One's father.

69.     Student One's father called Roberts to report the event and location of the
school bus. Roberts acknowledged that Naisbitt was there in the school bus and laughed about the
incident. Student One's father explained that it was not a comical situation. After that, Naisbitt
was removed from the route for a few days before returning to the very same route which serviced
Child Doe and Students One and Two.

70.     Student One's father drove his child to school each day from that point
forward. Student Two occasionally rode with them.

71.     Both Students were fearful of riding the bus because of Naisbitt's racial animus and discriminatory conduct.

72.      Sometime in November 2018, Child Doe was approached by two students on the bus who asked him why his mom was "trying to get John fired." Clearly, school officials were discussing the incident with students or their parents. This added to the hostile education environment Child Doe was experiencing at school and on the bus.

73.     Roberts and other DSD administrators, were all aware that Naisbitt was harassing and assaulting some of the students assigned to ride his bus, and doing so based on race.

74.     Roberts and the DSD administrators were deliberately indifferent to the racial discrimination and assaults and took no action to forbid, prevent or punish this wrongful conduct.

### ~ Impact of Unchecked Racial Harassment, Bullying and Profiling on Child Doe ~

75.     The Defendants' deliberate indifference is shown by their failure to take meaningful action to address prior racial assaults, harassment, discrimination and bullying. This caused Child Doe to be denied equal educational access, opportunities and privileges while a student at West Point Junior High.

76.     The racial assaults, harassment, discrimination and bullying that Child Doe has experienced at West Point Junior High, and the Defendants' deliberate indifference and failure to take meaningful action to address this, has traumatized Child Doe psychologically and emotionally.

77.     "Institutional betrayal" or "betrayal trauma" occurs specifically when school institutions, such as WPJH and/or West Point Elementary, are deliberately indifferent and

fail to prevent or respond supportively or appropriately to wrongdoing or racial discrimination perpetrated on an individual within the context of the school experience.

78.     Child Doe may also require additional special education services to accommodate the emotional and mental health conditions he has as a result of Naisbitt's abusive behavior and school officials' failure to take appropriate action and/or to support him.

## FIRST CAUSE OF ACTION

### ~ Title VI of the Civil Rights Act of 1964 ~

#### *Assault, Harassment and Discrimination on the Basis of Race*

79.     Plaintiff incorporates by reference all other paragraphs herein.

80.     Title VI of the Civil Rights Act of 1964 states that:

> No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

42 U.S.C. § 2000d.

81.     For purposes of Title VI, a "program or activity" is defined as follows:

> For the purposes of this subchapter, the term "program or activity" and the term "program" mean all of the operations of – (B) a local educational agency (is defined in section 7801 of title 20) system of vocational education, or other school system.

42 U.S.C. § 2000d-4a.

82.     Title VI is implemented through the Code of Federal Regulations, which

provides:

> The purpose of this subpart is to implement the provisions of title VI of the Civil Rights Act of 1964, 78 Stat. 252 (hereafter referred to as the "Act"), to the end that no person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or otherwise be subjected to discrimination under any program or activity receiving Federal financial assistance from the Department of Justice.

28 CFR Ch.1, § 42.101

83.     Discrimination is further prohibited in the Code of Federal Regulations as

follows:

> **Discrimination prohibited.**
> (a) General. No person in the United States shall, on the ground of race, color, or national origin be excluded from participation in, be denied the benefits of, or be otherwise subjected to discrimination under a program to which this subpart applies.

28 CFR Ch.1, § 42.104.

84.     The above subpart, § 42.104, describes "specific discriminatory actions"

which are prohibited. These include:

> (iv) Restrict an individual in any way in the enjoyment of any advantage or privilege enjoyed by others receiving any disposition, service, financial aid, or benefit under the program.

28 CFR Ch.1, § 42.104(b)(iv).

85.     In political activities that occurred prior to the enactment of the Civil Rights

Act of 1964 on July 2, 1964, various leaders addressed the purpose of the act which had been

wending its way through congress. President John F. Kennedy said in 1963:

> Simple justice requires that public funds, to which all taxpayers of all races contribute, not be spent in any fashion which encourages, entrenches, subsidizes or results in racial discrimination.

Title VI of The Civil Rights Act of 1964, CRT, Justice Department, p. 1.

86.     DSD directly, and the other Defendants indirectly, are recipients of federal

financial assistance.

87.     The acts and omissions of DSD, which include acts and omissions of DSD

administrators, officials and employees, violated Child Doe's rights under Title VI by

discriminating against him on the basis of race.

15

88.    DSD administrators and officials had actual notice that harassment, assaults, retaliation, and discrimination on the basis of race had occurred due to Naisbitt's actions. They further had notice that this conduct was severe, pervasive and objectively offensive, such that it created a hostile educational climate based upon race and deprived Child Doe of access to educational programs, activities and opportunities.

89.    DSD, it's policy makers, officials, administrators, the other Defendants and other employees such as Roberts, exhibited deliberate indifference to the above-described harassment, assault, retaliation, and discrimination against Child Doe based upon his race and in violation of Title VI. Through their deliberate indifference, DSD and the other defendants caused Child Doe to be subjected to the above-described racially motivated assault, harassment and discrimination.

90.    DSD's violations of Title VI were the actual, direct, and the proximate cause of injuries and discrimination suffered by Child Doe as alleged.

91.    Prior to the assault on Child Doe, DSD had actual knowledge that other students had experienced similar racially motivated assaults and harassment at the hands of Naisbitt.

92.    DSD was obligated to address these reports.

93.    DSD was also obligated to address these other reports of assault under Title VI because DSD, through the other Defendants, had control over Naisbitt, as well as control over the school or schools where the assaults and harassment occurred—i.e., West Point Junior High and West Point Elementary.

94.    The individuals with actual knowledge, including Defendants DSD and Roberts, had the authority and ability to investigate and take meaningful corrective action to end

or prevent future racial profiling, assaults and harassment, such as that endured by Child Doe, but they failed to do so.

95.     The assaults and harassment Child Doe suffered created a hostile educational environment at WPJH based on Child Doe's race.

96.     DSD, by its acts and omissions, created a hostile educational climate where Naisbitt's assaults and harassment were tolerated and minimized.

97.     Such early tolerance of harassment encouraged later race-based harassment, discrimination and assault, and proximately caused injuries to Child Doe.

98.     As a direct and proximate result of Defendant DSD's violation of Child Doe's rights under Title VI, and DSD's deliberate indifference to the wrongful conduct of Naisbitt and Roberts, Child Doe has suffered and continues to suffer losses of educational opportunities and benefits, along with injuries, damages and losses, including, but not limited to: emotional distress, fear, anxiety and trauma; lost future earnings and earning capacity; and expenses for past and future medical and psychological care.

99.     Child Doe requests judgment in his favor against Defendants as set forth in the Prayer for Relief.

100.    Plaintiff is entitled to attorney fees and costs against Defendants.

## SECOND CAUSE OF ACTION

### ~ Violation of Fourteenth Amendment Under 42 U.S.C. § 1983 ~

#### Denial of Equal Protection on The Basis of Race

*(brought by Child Doe through his mother Brenda Mayes,*
*Against DSD, Roberts and Naisbitt, as well as Defendants John & Jane Roe)*

101.    Plaintiff incorporates by reference all other paragraphs herein.

102.    The Fourteenth Amendment to the U.S. Constitution provides in relevant part that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

103.    42 U.S.C. § 1983 creates a cause of action for damages and injunctive relief against any person who, under color of law, deprives any person of "rights, privileges, or immunities secured by the Constitution and laws," including the Equal Protection Clause.

104.    Child Doe has a Fourteenth Amendment and § 1983 right as a public-school student to equal protection of the laws.

105.    Child Doe further has the right of equal access to an educational environment free from harassment and discrimination on the basis of race.

106.    Defendants DSD, Roberts, John & Jane Roes, and Naisbitt were at all relevant times state actors, acting under color of state law.

107.    Defendants DSD, Roberts, and John & Jane Roes ("these Defendants") were obligated to address known race-based harassment and/or assault on students by bus driver Naisbitt.

108.    Prior to the assault on Child Doe on February 4, 2019, these Defendants all had actual knowledge that other students had experienced assaults and harassment at WPJH by Naisbitt.

109.    These Defendants had actual knowledge that Child Doe was not the only student subjected to race-based assault and harassment by Naisbitt, based on at least three other reports by parents as set forth in the facts above.

110.    These Defendants, by their acts and omissions, created a racially hostile educational climate where assaults and harassment by Naisbitt were consciously tolerated.  This encouraged repeated assault and harassment, which proximately caused injuries to Child Doe.

111.    These Defendants were deliberately indifferent to acts of race-based discrimination by Naisbitt against biracial students such as Child Doe and Students One and Two. Defendants were deliberately indifferent because they had actual knowledge of prior acts of discrimination prior to February 4, 2019 and chose to do nothing or to take inadequate actions, which directly led to the actions against Child Doe perpetrated by Naisbitt on 2/4/2019.

112.    These Defendants violated Child Doe's right to equal protection of the laws on the basis of his race by acting with deliberate indifference to Child Doe's reports of assault and harassment, as well as to the hostile education environment under which Child Doe suffered because of their failure to take meaningful corrective action.

113.    The practices, policies, or customs of these Defendants in responding to such harassment based on race were so clearly unreasonable in light of the known circumstances as to give rise to a reasonable inference that each of these Defendants intended for the harassment to occur and continue.

114.    The practices, policies, or customs of these Defendants have substantially contributed to the creation of a pervasive racially hostile environment in DSD and exacerbated the harassment by Naisbitt.

115.    These Defendants failed to adequately train school district staff about polices prohibiting harassment and discrimination on the basis of race. These Defendants' failure to train caused Child Doe to be subjected to discrimination and harassment on the basis of race.

116.    These Defendants' deliberate indifference included the matters set forth above, as well as at least the following:

a)      Failing to take appropriate action in 2018, when Naisbitt closed the bus door on biracial Students One and Two one afternoon while being picked up at West Point Elementary. See ¶ 55 above.

b)      Refusing to investigate Student One and Student Two's reports of abuse by Naisbitt as reports of racial assault, harassment and discrimination.

c)      Failure to take appropriate disciplinary action against Naisbitt when he exhibited hostility toward the father of Student One.

d)      Failing to take action against Naisbitt in 2017 when he parked his bus outside of the approved loading zone and remained there for approximately 30 minutes while students remained onboard, forcing many parents to come pick up their children at the remote location.  See ¶ 54 above.

e)      Failing to take action against Naisbitt when he acted with raced-based discrimination against Child Doe when Doe was involved in a shoving incident in 2017.

f)      Refusing to treat Child Doe's reports of abuse by Naisbitt as reports of assault, harassment and racial discrimination;

g)      Characterizing the assaults Child Doe reported as normal, and not offensive, abusive, dangerous or serious;

h)      Refusing to investigate Child Doe's reports of assault and harassment, and instead designating them as accidental, incidental or harmless;

i)      Creating a hostile educational climate that tolerates racial discrimination, assault, harassment, retaliation and threats of bodily harm;

j)      Prioritizing the career of Naisbitt over Child Doe's safety and education, and over DSD's obligation to conduct an appropriate investigation into Child Doe's reports of assault, harassment, discrimination, and threats of bodily harm;

k)      Deciding not to investigate or seriously discipline Naisbitt who subjected Child Doe to harassment, assault and threat of bodily harm;

l)      Failing to offer, provide, recommend, or coordinate psychological, counseling, and academic assistance and services to Child Doe after he reported the assaults, harassment and discrimination;

m)      Failing to take meaningful action to correct the conditions causing the harassment and to prevent recurrence of the harassment;

n)      Failure to cooperate with law enforcement in getting Naisbitt prosecuted for both the October 10, 2018 and February 4, 2019 incidents; and

o)      Failure to cooperate with DCFS in filing child abuse charges against Naisbitt.

117.    As a direct and proximate result of Defendant's violation of Child Doe's equal protection rights under the Fourteenth Amendment, Child Doe has suffered and continues to suffer losses of educational opportunities and benefits, along with injuries, damages and losses, including, but not limited to: emotional distress, fear, anxiety and trauma; lost future earnings and earning capacity; and expenses for past and future medical and psychological care.

118.    Such violation of Plaintiff's rights is actionable under 42 U.S.C. §1983, and Plaintiff is entitled to judgment against Defendants under that section for damages in an amount to be proved at trial.

119.    Plaintiff is entitled to attorney fees and costs against Defendants under 42 U.S.C. §1988.

120.    This violation was intentional, malicious, and/or reckless, and Defendants are therefore subject to punitive damages.

## THIRD CAUSE OF ACTION

### ~ Unconstitutional Policies, Practices, Procedures, Customs, and/or Training ~

**Cognizable Under 42 U.S.C. § 1983**
*Against Defendant Davis School District and Roberts*

121.    Plaintiff incorporates by reference all other paragraphs herein.

122.    DSD had a duty to have in place constitutional policies, practices, procedures, customs, and training to ensure its employees were trained and prepared to handle situations involving racial discrimination against students.

123.    The Fourteenth Amendment deprivations suffered by Plaintiff are proximate results of the constitutionally deficient policies, procedures, practices, training, and/or customs designed, implemented, enforced, and maintained by DSD, in that DSD has maintained

polices, practices, procedures, customs, and training which allows, tolerates, or tacitly condones racial discrimination by employees such as Naisbitt against students, leading to the violation of protected constitutional rights of such students.

124.    School Districts are required to adopt and implement policies in accordance with the United States code and are further required to train District Employees with regard to these policies.

125.    If DSD did have a constitutional policy in place at all relevant times to this action, DSD had unconstitutional customs and practices of:

a)      failing to appropriately investigate and respond to reports of racial harassment, including assault and race-based discrimination;

b)      failing to enforce its policies prohibiting racial harassment and race-based discrimination;

c)      failing to adequately train District administrators and employees on how to recognize, address, and prevent racial discrimination against, and harassment of, its students.

126.    The District followed these unconstitutional customs, practices, and/or policies not only with regard to Child Doe, but also with regard to the harassment of other students at West Point Elementary and WPJH, such as Students One and Two.

127.    At all relevant times, Defendant DSD had final policymaking authority regarding the District's Policies, including, but not limited to, its policy prohibiting harassment, race-based discrimination and racial bullying.

128.    At all relevant times, Roberts had final authority over school bus transportation in the DSD, which included supervision of Naisbitt. Roberts was responsible for

enforcing the policies to prevent bullying and racial discrimination by his drivers and was charged with taking expeditious action to correct such conditions when he found them, including the initiation of appropriate corrective actions and identification and enactment of methods to prevent reoccurrence of harassment, assault and race-based discrimination.

129.    Roberts was deliberately indifferent to race-based harassment, assault, retaliation, and discrimination by Naisbitt as described herein.

130.    Roberts deliberately and prematurely closed the investigation on the 10/10/2018 incident, allowing the video footage to be overwritten.

131.    Roberts and other John & Jane Roe defendants were deliberately indifferent to racial discrimination foisted upon young students by Naisbitt over a period of about 18 months, prior to the incident of 2/4/2019 described in this complaint.

132.    Defendants violated the District's Policy in their response to Child Doe and other students' reports of racial harassment and bullying.

133.    The failure of Defendants to respond appropriately to reports of harassment and bullying by Naisbitt caused Child Doe to be subjected to repeated race-based harassment and bullying, including assault.

134.    As a direct and proximate result of the Defendants' violation of Child Doe's equal protection rights under the Fourteenth Amendment, Child Doe has suffered and continues to suffer losses of educational opportunities and benefits, along with injuries, damages and losses, including, but not limited to: emotional distress, fear, anxiety and trauma; lost future earnings and earning capacity; and expenses for past and future medical and psychological care.

135.     Such violation of Plaintiff's rights is actionable under 42 U.S.C. §1983, and Plaintiff is entitled to judgment against Defendants under that section for damages in an amount to be proven at trial.

136.     Plaintiff is entitled to attorney fees and costs against Defendants under 42 U.S.C. §1988.

## JURY DEMAND

Pursuant to F.R.Civ.P. 38, Plaintiff demands a trial by jury for all issues herein.

## REQUESTS FOR RELIEF

**WHERFORE**, Plaintiff respectfully demands judgment against Defendants as follows:

1.     Compensatory damages in amounts to be established at trial, including, without limitation, payment of Plaintiff's expenses incurred as a consequence of the race-based assault, harassment, discrimination, and Defendants' failure to take meaningful corrective action.

2.     Damages for deprivation of equal access to the educational opportunities and benefits provided by DSD.

3.     Damages for past, present and future emotional pain and suffering, ongoing mental anguish, loss of past, present and future enjoyment of life, and loss of future earnings and earning capacity.

4.     Punitive damages as allowed by law.

5.     Injunctive relief to be determined at trial requiring Defendants to comply with Title VI and the Fourteenth Amendment's Equal Protection Clause.

6.      Pre- and post-judgment interest.

7.      Costs and attorney fees pursuant to Title VI and pursuant to 42 U.S.C. §1988(b).

8.      Such other and further relief as the Court may deem just and proper.


DATED this 6th day of May 2019


                          SYKES MCALLISTER LAW OFFICES, PLLC

                          /s/Robert B. Sykes
                          ROBERT B. SYKES
                          ALYSON C. MCALLISTER
                          *Attorneys for Plaintiff*